# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CP KELCO US, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-08-068-SPS |
| | ) | |
| INTERNATIONAL UNION OF | ) | |
| OPERATING ENGINEERS | ) | |
| LOCAL NO. 627, AFL-CIO, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER GRANTING
## SUMMARY JUDGMENT IN FAVOR OF THE PLAINTIFF

The Plaintiff CP Kelco US, Inc. brought this action pursuant to the National Labor Relations Act, 29 U.S.C. §§ 151-169 (the "NLRA") to set aside an arbitrator's award in favor of the Defendant International Union of Operating Engineers, Local No. 627, AFL-CIO. The arbitrator determined that CP Kelco violated the terms of a collective bargaining agreement with the Union by unilaterally altering an after-hours call-back policy. The Union moved to dismiss this action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *See* Docket Nos. 9 & 10. CP Kelco objected and moved for summary judgement in its favor pursuant to Fed. R. Civ. P. 56. *See* Docket Nos. 11 & 16. The Union thereupon moved to dismiss the summary judgment motion, to which CP Kelco also objected. *See* Docket Nos. 18 & 22. For the reasons set for below, the Defendant's Motion to Dismiss [Docket No. 9] and the Defendant's Motion to Summarily Dismiss Plaintiff's Motion for Summary Judgment [Docket No. 18] are hereby DENIED, and the Plaintiff's Motion for Summary Judgment and Brief in Support [Docket No. 16] is hereby GRANTED.

## A. Factual Background

CP Kelco operates a plant in Okmulgee, Oklahoma, that manufactures zanthan gum and welan gum for use in the food, oil, and printing industries. The plant operates twenty-four hours a day. The Union represents nearly one hundred employees at the plant, including fourteen maintenance mechanics. The parties entered into a collective bargaining agreement effective from December 1, 2002, through November 30, 2007. The agreement provides in pertinent part for a minimum of four hours pay for mechanics called back to work after hours but does not otherwise mention any call-back policy. Prior to the execution of the agreement, CP Kelco had in place a voluntary call-back policy that required mechanics to carry pagers while off-duty but imposed no discipline for failing to do so. CP Kelco amended the call-in policy in May, 2003 (by enhancing call-in pay) and in September, 2003 (by dropping the pager requirement), but eventually decided the entire "2003 Call-In Policy" should be revised to ensure adequate after-hours coverage at the plant. After discussions with the Union over the terms of a new call-in policy proved unsuccessful, CP Kelco unilaterally implemented a new policy on January, 15, 2007, pursuant to its authority under the Management Rights Article of the collective bargaining agreement to "establish and to alter from time to time reasonable work and shop rules and regulations to be observed and complied with by employees, which rules shall not be inconsistent with the provisions of this Agreement." *See* Docket No. 11, Ex. 3, Art. IX, ¶ D. The new "2007 Call-In Policy" provided, *inter alia*, that maintenance mechanics were required to carry pagers while off-duty on a rotating basis and that discipline would be imposed for failure to return to work in response to a page. The

Union responded with a grievance alleging that CP Kelco's unilateral adoption of the new "2007 Call-In Policy" violated the terms of the collective bargaining agreement.

The Union's grievance proceeded to an arbitration hearing in accordance with the terms of the collective bargaining agreement. On December 18, 2007, the arbitrator decided in favor of the Union, finding that the 2003 Call-In Policy "created a past practice" that could not be altered unilaterally and that CP Kelco therefore violated the Management Rights Article of the collective bargaining agreement by doing so. *See* Docket No. 11, Ex. 2, pp. 17-18. The arbitrator ordered the parties to follow the 2003 Call-In Policy while bargaining over any changes thereto and imposed a remedy of back pay for any mechanic called back to work under the 2007 Call-In Policy from the time he received his page *in addition to* the compensation provided in the collective bargaining agreement. *See* Docket No. 11, Ex. 2, p. 19. CP Kelco thereupon filed this action to vacate the arbitrator's decision.

### B. Procedural Posture Of The Case

It is initially necessary to clarify the procedural posture of the case and consequently the applicable standard by which to evaluate the pending motions. The Union seeks dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Such a motion would ordinarily be decided solely on the sufficiency of the complaint, *i. e.*, whether the factual allegations contained therein state a plausible claim for vacation of the arbitrator's award. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, ___ , 127 S. Ct. 1955, 1974 (2007) (complaint must plead "enough facts to state a claim to relief that is plausible on its face."). But CP Kelco submitted evidentiary materials in response to the Union's motion to dismiss,

*i. e.*, a copy of the arbitrator's decision (which was likewise attached to the complaint) and a copy of the collective bargaining agreement. The Court has considered these materials, so the Union's motion may now be regarded as one for summary judgment in its favor pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). CP Kelco likewise seeks summary judgment in its favor pursuant to Fed. R. Civ. P. 56, and objects to the formal sufficiency of the Union's response to its summary judgment motion. *See, e. g.,* E.D.OK L.Cv.R 56.1(c) ("The response brief . . . shall begin with a section which contains a concise statement of material facts to which the party asserts genuine issues of fact exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies and, if applicable, shall state the numbered paragraphs of the movant's facts that are disputed.").

Because it is clear from the record that the parties have briefed the pertinent legal issues to their satisfaction, that the material facts are not in dispute and that one party or the other is entitled to judgment as a matter of law, the Court elects to forego any procedural deficiencies and will address the pending motions as cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56. *See, e. g., Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 692 (10th Cir. 1981) ("[C]ross motions for summary judgments do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties.") [citations omitted]. In this regard, summary judgment is

appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### C. Review Of The Arbitrator's Decision

When parties to a collective bargaining agreement have agreed to submit grievances to a neutral arbitrator, *see United Paperworkers International Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) ("Collective-bargaining agreements commonly provide grievance procedures to settle disputes between union and employer with respect to the interpretation and application of the agreement and require binding arbitration for unsettled grievances."), the scope of judicial review is narrow. *See, e. g., United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 567-68 (1960) ("The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator."). "'This narrow standard of review is mandated by a strong Congressional policy of encouraging the peaceful resolution of labor disputes by means of binding arbitration. In furtherance of that policy, the courts decline to review the merits of arbitration awards so that both employers and unions can be confident in obtaining the decision of the arbitrator for which they have bargained.'" *NCR Corp., E & M-Witchita v. International Association of Machinists and Aerospace Workers, District Lodge No. 70*, 906 F.2d 1499, 1504 (10th Cir. 1990), *quoting Kane Gas Light & Heating Co. v. International Brotherhood of Firemen and Oilers, Local 112*, 687 F.2d 673, 678 (3d Cir. 1982), *cert. denied*, 460 U.S. 1011 (1983). Thus, if the arbitrator acts within his authority by interpreting

the collective bargaining agreement, his decision is not reviewable on the merits but must instead be strictly enforced.

For purposes of review, the pertinent question is not whether the arbitrator *correctly* interpreted the collective bargaining agreement, but simply *whether* the arbitrator interpreted the collective bargaining agreement. Reasonable doubts about *whether* the arbitrator was interpreting the agreement should be resolved in favor of finding that he was. *See, e. g., Judsen Rubber Works*, *Inc. v. Manufacturing, Production & Service Workers Union Local No. 24*, 889 F. Supp. 1057, 1061 (N.D. Ill. 1995) ("Any reasonable doubt whether the arbitrator interpreted the contract or relied on some private notion of equity must be resolved in favor of enforcing the award."), *citing Ethyl Corp. v. United Steelworkers of America, AFL-CIO-CLC*, 768 F.2d 180, 185 (7th Cir. 1985), *cert. denied*, 475 U.S. 1010 (1986). An arbitrator's misinterpretation of the collective bargaining agreement is unreviewable, *see*, *e. g.*, *NCR Corp.*, 906 F.2d at 1506 ("[S]o long as the arbitrator interpreted the contract in making his award, his award must be affirmed, even if he, in fact, misinterpreted that contract."), *citing Dreis & Krump Manufacturing Co. v. International Association of Machinists and Aerospace Workers*, *District No. 8*, 802 F.2d 247, 253 (7th Cir. 1986), as are any errors in his fact-finding. *See Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1269 (10th Cir. 1999) ("It does not matter that an arbitrator's express factual finding may have ignored or contradicted some or even all of the evidence; his or her factual findings are beyond review."), *citing Champion Boxed Beef Co. v. Local No. 7 United Food & Commercial Workers International Union*, 24 F.3d 86, 87 (10th Cir. 1994) ("The arbitrator's

factual findings are beyond review[.]"). Even *serious errors* by the arbitrator are unreviewable. *See Major League Baseball Players Association v. Garvey*, 532 U.S. 504, 510 (2001) ("But even 'serious error' on the arbitrator's part does not justify overturning his decision, where, as here, he is construing a contract and acting within the scope of his authority."), *citing Misco*, 484 U.S. at 38. *See also Misco*, 484 U.S. at 36 ("The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact[.]"). *See generally Sterling Colorado Beef Co. v. United Food & Commercial Workers, Local Union No. 7*, 767 F.2d 718, 720 (10th Cir. 1985) ("The arbitrator's award is not open to review on the merits. 'The merits embrace not only asserted errors in determining the credibility of witnesses, the weight to be given their testimony, and the determination of factual issues, but also the construction and application of the collective bargaining agreement.'"), *quoting Amalgamated Butcher Workmen Local Union No. 641 v. Capitol Packing Co.*, 413 F.2d 668, 672 (10th Cir. 1969).

Despite these limitations on judicial review, an arbitrator's decision is not entirely beyond the reach of the courts. "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960). Thus, while an arbitrator may resolve any ambiguities he

-7-

finds in the collective bargaining agreement by considering extrinsic matters such as past practices or the "law of the shop," *see, e. g., Champion Boxed Beef Co.*, 24 F.3d at 88-89 ("It is a well-recognized principle that, except where expressly limited by a labor agreement, an arbitrator may consider and rely upon extrinsic evidence, including negotiating and contractual history of the parties, evidence of past practices, and the common law of the shop, when interpreting ambiguous provisions."), *citing NCR Corp.*, 906 F.2d at 1501, the arbitrator may not use such extrinsic matters to alter or rewrite any unambiguous provisions in the collective bargaining agreement. *See, e. g., Tootsie Roll Industries, Inc. v. Local Union No. 1, Bakery, Confectionery & Tobacco Workers' International Union,* 832 F.2d 81, 84 (7th Cir. 1987) ("[R]eliance on the law of the shop is appropriate to interpret ambiguous contract terms, [but] the law of the shop cannot be relied upon to modify clear and unambiguous provisions."). Nor may the arbitrator exceed any authority granted to him by the collective bargaining agreement, *see, e. g., Conoco, Inc. v. Oil, Chemical & Atomic Workers International Union (AFL-CIO)*, 1988 WL 163062, at *3 (10th Cir. Sept. 12, 1988) ("The arbitrator derived his decision from a policy or body of thought outside the contract, rather than from the agreement and the existing industrial common law. The arbitrator, therefore, exceeded his authority.") [unpublished opinion], or render a decision in conflict therewith. *See, e. g., Spero Electric Corp. v. International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 1377*, 439 F.3d 324, 328 (6th Cir. 2006) ("'An arbitrator's award fails to draw its essence from the agreement when: (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the

agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement.'") [internal quotation marks omitted], *quoting Beacon Journal Publishing Co. v. Akron Newspaper Guild*, *Local No. 7*, 114 F.3d 596, 600 (6th Cir. 1997).

### D. Analysis

The Court is satisfied that the arbitrator's decision in this case *did not* draw its essence from the collective bargaining agreement between the parties. The decision instead drew its essence from the 2003 Call-In Policy, which the arbitrator found was an enforceable past practice that CP Kelco could not unilaterally alter or amend. Had the arbitrator simply utilized the 2003 Call-In Policy to interpret an ambiguous provision in the collective bargaining agreement, *e. g.*, the meaning of the term "reasonable work and shop rules" under the Management Rights Article, *see* Docket No. 11, Ex. 3, Art. IX, ¶ D (reserving the right to "establish and to alter from time to time reasonable work and shop rules and regulations to be observed and complied with by employees"), the Court would be constrained to enforce the arbitrator's decision. *See, e. g., Champion Boxed Beef Co.*, 24 F.3d at 88-89 (approving an arbitrator's resort to past practices to interpret the ambiguous term "reasonable work"). But the arbitrator found no such ambiguity in the collective bargaining agreement, apparently concluding instead that he could resort to past practices even if inconsistent with the unambiguous language of the collective bargaining agreement. *See* Docket No. 11, Ex. 2, p. 16 ("The Company argued that this arbitrator should be guided by the "Plain Meaning"

Rule thereby precluding any consideration of evidence contrary to the literal language of the CBA. This arbitrator cannot accept such a simple solution to labor disputes[.]").

The arbitrator *did* of course note the absence of any provision in the collective bargaining agreement setting forth specific call-in procedures. *See* Docket No. 11, Ex. 2, p. 17 ("There is nothing in the CBA which specifically addresses 'call-in policy' procedures."). But the failure to specify call-in procedures introduced no ambiguity into the collective bargaining agreement, *see, e. g., Great Lakes Energy Cooperative v. Local 876 International Brotherhood of Electrical Workers,* 183 L.R.R.M. 2892, 2899 (W.D. Mich. 2008) ("If the current CBA did not reach a particular question, then there was nothing for the arbitrator to construe or apply."), as CP Kelco reserved the right to specify such procedures itself under the Management Rights Article. *See* Docket No. 11, Ex. 3, Art. IX, ¶ D (reserving the right to "establish and to alter from time to time reasonable work and shop rules and regulations to be observed and complied with by employees").[1] Nor did the arbitrator find otherwise;

---

[1] Even if ambiguity *did* arise from silence in the collective bargaining agreement as to call-in policy procedures, any past practice established by the 2003 Call-In Policy was subject to unilateral alteration by CP Kelco when circumstances changed, *i. e.*, when the policy failed to ensure adequate shop coverage. *See, e. g., Chicago Web Printing Pressmen's Union, No. 7 v. Chicago Newspaper Publishers' Association*, 772 F.2d 384, 387-88 (7th Cir. 1985) ("[O]nce a past practice is established, it is not always enforced by arbitrators to the same extent as contractual terms . . . and may be modified or eliminated by the employer where the underlying basis for the practice has changed."), *citing* Elkouri & Elkouri, *How Arbitration Works,* 400-01 (3d ed. 1976). *See also id.* at 388 ("In sum, although the arbitrator in this case found that dual chapel seniority was an established past practice, the seniority system did not automatically become enshrined as part and parcel of the collective bargaining agreement, with the same binding effect on the parties as their contractual provisions. Rather, the arbitrator was entitled to determine whether there was a change in conditions such that the past practice should not be deemed part of the written agreement in the first instance.") [footnote omitted].

on the contrary, the arbitrator himself acknowledged that the 2003 Call-In Policy was adopted (and amended) by CP Kelco without the consent of the Union, *i. e.*, unilaterally, which was clearly in accordance with the Management Rights Article of the collective bargaining agreement. *See* Docket No. 11, Ex. 2, p. 17 ("The 2003 Pager Policy was implemented without Union agreement, but followed by the parties for four years.").[2]

That the arbitrator was not resolving any perceived ambiguity is buttressed by his conclusion as to the specific violations of the collective bargaining agreement committed by CP Kelco: "The arbitrator concludes that the Company unilaterally implemented the 2007 Call-In Policy in violation of its duty to bargain to revise its past practice. This, in general, would be a violation of the Management Rights Article of the CBA." *See* Docket No. 11, Ex. 2, p. 18. Being unable to point to any specific provision of the collective bargaining

---

[2] The arbitrator *did* find that the parties negotiated over the 2003 Call-In Policy but not over the 2007 Call-In Policy (although the arbitrator detailed discussions over the 2007 Call-In Policy that apparently did not amount to "negotiations"). Thus, the past practice with which the arbitrator seemed most concerned was apparently *not* the 2003 Call-In Policy itself, but rather a perceived past practice of negotiating changes to call-in policies. *See* Docket No. 11, Ex. 2, p. 18 ("The testimony of both the HR Manager and Plant Engineer stated that the Company was not obligated to bargain with the Union concerning the revised call-in policy and it had the right to unilaterally implement the [2007 Call-In] Policy. The history of the parties' relationship since the effective date of the CBA is consistently contrary to this position."). While this was not the basis for the decision, it may explain why the arbitrator ordered remedies wholly inconsistent with the idea that the 2003 Call-In Policy was an enforceable past practice, *i. e.*, the order to negotiate over the 2007 Call-In Policy, *see, e. g., Great Lakes Energy,* 137 L.R.R.M. at 2899 ("Moreover, the arbitrator directed the parties to 'again negotiate,' but it is conceptually inconsistent to conclude that a binding agreement between the parties resolves an issue and to order the parties to negotiate the issue. To do so voids the prior agreement reached by the parties."), and the back-pay remedy, calculated from the receipt of a page rather than according to the compensation provided by the 2003 Call-In Policy. Such remedies clearly flowed not from anything in the collective bargaining agreement (whether or not amended by the 2003 Call-In Policy), but instead from the arbitrator's "own brand of industrial justice." *Enterprise Wheel & Car,* 363 U.S. at 597.

agreement violated by CP Kelco, the arbitrator could do nothing more than find a general violation premised on a past practice, *i. e.*, the 2003 Call-In Policy. The Court therefore finds that the arbitrator did not simply utilize the 2003 Call-In Policy as an aid to resolving ambiguity in the collective bargaining agreement.

On the contrary, the foregoing demonstrates that the arbitrator essentially amended the contract between the Union and CP Kelco by importing the 2003 Call-In Policy into the collective bargaining agreement. *See, e. g., Tootsie Roll Industries, Inc.*, 832 F.2d at 84 ("While reliance on the law of the shop is appropriate to interpret ambiguous contract terms . . . the law of the shop cannot be relied upon to modify clear and unambiguous provisions."). He was specifically forbidden to do this by the collective bargaining agreement and therefore exceeded his authority thereunder. *See* Docket No. 11, Ex. 3, Art. XIII, ¶ 13.5 ("The arbitrator's authority shall be limited to the application of this Agreement, and he/she shall have no authority to render an award which amends, alters or modifies any provision of this Agreement."). Furthermore, the arbitrator essentially found that by exercising its contractual right to unilaterally adopt the 2003 Call-In Policy, CP Kelco thereby surrendered the right to make any further unilateral changes. *See, e. g., Beacon Journal Publishing Co.*, 114 F.3d at 601 ("[T]he Beacon Journal retained the right to unilaterally change its vacation policy; to hold that once the Beacon Journal sets forth a vacation policy, it is bound by it, would be incongruous with the collective bargaining agreement."). This was clearly at odds with the language of the Management Rights Article of the collective bargaining agreement, under which CP Kelco reserved the right to make such changes. *See* Docket No. 11, Ex. 3, Art. IX,

¶ D (reserving the right to "establish and to alter from time to time reasonable work and shop rules and regulations to be observed and complied with by employees").

In summary, the Court finds that the decision of the arbitrator in this case does not draw its essence from the collective bargaining agreement. On the contrary, the decision draws its essence from the 2003 Call-In Policy, which the arbitrator utilized not as an interpretive aid but instead as a past practice binding on the parties. In so doing, the arbitrator exceeded his authority under the collective bargaining agreement and rendered a decision inconsistent therewith. *See, e. g., Conoco, Inc.*, 1988 WL 163062, at *3 ("The arbitrator derived his decision from a policy or body of thought outside the contract, rather than from the agreement and the existing industrial common law. The arbitrator, therefore, exceeded his authority.") [unpublished opinion] and *Spero Electric Corp.*, 439 F.3d at 328 ("'An arbitrator's award fails to draw its essence from the agreement when: (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement.'") [internal quotation marks omitted], *quoting Beacon Journal Publishing Co.*, 114 F.3d at 600. CP Kelco is therefore entitled to summary judgment in its favor vacating the arbitrator's decision.

### E. Conclusion

For the reasons set forth above, the Defendant's Motion to Dismiss [Docket No. 9] (construed herein as a motion for summary judgment) and the Defendant's Motion to

Summarily Dismiss Plaintiff's Motion for Summary Judgment [Docket No. 18] are hereby DENIED.  The Plaintiff's Motion for Summary Judgment and Brief in Support [Docket No. 16] is hereby GRANTED.  Judgment will be rendered in accordance herewith.

**IT IS SO ORDERED** this 30th day of March, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**